**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| General Electric Capital Corporation, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION FOR TEMPORARY** |
| Plaintiff, | ) | **RESTRAINING ORDER** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:14-cv-150 |
| Deer Valley Trucking, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Plaintiff's "Motion for Temporary Restraining Order" filed on November 24, 2014. See Docket No. 5. The Plaintiff, General Electric Capital Corporation, seeks a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Specifically, the Plaintiff requests an order prohibiting the Defendant from moving, sequestering, or using collateral securing loans, which consists of highly mobile tanker-trailers, until further order of the Court. For the reasons set forth below, the Court grants the Plaintiff's motion for a temporary restraining order.

**I.   BACKGROUNND**

The Plaintiff, General Electric Capital Corporation ("GE Capital"), is a corporation organized and existing under the laws of the State of Delaware with its principal office located in Connecticut.

The Defendant, Deer Valley Trucking, Inc. ("Deer Valley"), is a corporation organized under the laws of Idaho, and has its principal place of business located in Idaho Falls, Idaho.

GE Capital alleges that on or about April 27, 2012, Deer Valley executed a Promissory Note in favor of GE Capital in the original principal amount of $2,300,340. In order to secure the indebtedness due under the Promissory Note, GE Capital and Deer Valley entered into a Master

Security Agreement pursuant to which Deer Valley granted GE Capital a security interest in certain collateral identified in a Collateral Schedule. See Docket Nos. 1-1 and 1-3. On or about December 20, 2012, GE Capital gave Deer Valley notice of default. See Docket No. 1-4. Thereafter, on or about February 28, 2013, GE Capital, Deer Valley, and others entered into a forbearance and debt restructure agreement ("First Forbearance Agreement"). See Docket No. 1-5. On June 15, 2013, the loan was further modified in accordance with the terms of a second forbearance and debt restructure agreement ("Second Forbearance Agreement"). See Docket No. 1-6. GE Capital contends Deer Valley is in default under the Promissory Note, the Master Security Agreement, the Collateral Schedule, the First Forbearance Agreement and the Second Forbearance Agreement (collectively, the "Loan Documents") as a result of, inter alia, its failure to make payments when due thereunder. As a result, GE Capital has accelerated Deer Valley's obligations under the Loan Documents and they are immediately due and payable.

GE Capital contends it is entitled to immediate possession of all "Remaining Collateral" that continues to secure the balance due under the Loan Documents. See Docket No. 1-7. GE Capital has demanded that Deer Valley surrender the Remaining Collateral. Despite demand, Deer Valley has failed and refused to turn over possession of the Remaining Collateral to GE Capital. GE Capital is unaware of the exact location of the Remaining Collateral, but is informed and believes that all or most of it is presently located within District of North Dakota. The Remaining Collateral consists of tank trailers which can be easily attached to a semi-tractor and moved from place to place or jurisdiction to jurisdiction.

GE Capital filed a complaint in this Court on November 20, 2014. See Docket No. 1. The complaint makes claims for injunctive relief, specific performance, claim and delivery, and breach of contract. On November 24, 2014, GE Capital filed a "Motion for Temporary Restraining Order."

See Docket No. 5. GE Capital seeks to restrain and enjoin Deer Valley from moving, sequestering or using the Remaining Collateral identified in Docket No. 1-7 until further order of the Court. GE Capital has outlined its attempts to give notice to Deer Valley of its intention to seek a temporary restraining order. See Docket No. 7.

## II.     STANDARD OF REVIEW

GE Capital seeks a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, which provides in relevant part as follows:

> **(b) Temporary Restraining Order.**
>
> **(1) *Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). GE Capital seeks a temporary restraining order without first giving notice to the Defendants.

The United States Supreme Court has recognized that in some limited situations, a court may properly issue *ex parte* orders of brief duration and limited scope to preserve the status quo pending a hearing. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974); Carroll v. Princess Anne, 393 U.S. 175, 180 (1968). The limited nature of *ex parte* remedies

> reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 180 . . . (1968), but under federal law they should be restricted to serving their

3

underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

Granny Goose Foods, 415 U.S. at 438-39 (emphasis in original).

Rule 65(b) directs the court to look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In addition, it is well-established the court is required to consider the factors set forth in Dataphase Systems, Inc., v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981) in determining whether a temporary restraining order should be granted. The *Dataphase* factors include "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id.

## III. LEGAL DISCUSSION

It is well-established that the movant has the burden of establishing the necessity of a temporary restraining order. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989). "No single factor is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)).

### A. PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's "likelihood of success on the merits," the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors

4

the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase, 640 F.2d at 113). At this preliminary stage, the Court need not decide whether the party seeking the temporary restraining order will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. (quoting Dataphase, 640 F.2d at 113). The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Court must consider the substantive claims in determining whether GE Capital has a likelihood of success on the merits. GE Capital alleges four causes of action against the Deer Valley, including: injunctive relief, specific performance, claim and delivery, and breach of contract. See Docket No. 1. A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" *Dataphase* factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Court finds GE Capital has a strong likelihood of success on its claims against Deer Valley. Based on the limited record before the Court, it appears Deer Valley is in default on its loan obligations. Failure to make required payments under a loan agreement constitutes a breach of contract. The limited record further reveals GE Capital possesses a security interest in the Remaining Collateral which entitles it to immediate possession. The harm suffered by GE Capital is apparent as the outstanding loan balance is $677,686.

As the Court has found a strong likelihood of success on GE Capital's claims for breach of contract and claim and delivery, no further analysis is necessary at this point. See Nokota Horse Conservancy, 666 F. Supp. 2d at 1078-80 (finding sufficient likelihood of success on the merits of one claim, without a need to undertake extensive review of other claims). The Court finds GE Capital has shown the "success on the merits" *Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

### B.     **IRREPARABLE HARM**

GE Capital must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007) (citing Northland Ins. Co. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000)). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E. D. Mo. 2004). The party that seeks a temporary restraining order must show that a significant risk of harm exists. Doe, 514 F. Supp. 2d at 1135 (citing Johnson, 351 F. Supp. 2d at 945). The absence of such a showing is sufficient grounds to deny injunctive relief. Id. (citing Gelco v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987)).

GE Capital contends it will suffer irreparable injury if Deer Valley continues to use the Remaining Collateral. Given the potential for depreciation and deterioration of the Remaining Collateral which will occur with continued use, other legal and equitable remedies are inadequate. The Remaining Collateral is highly mobile and is capable of being moved throughout the country. GE Capital points out that if Deer Valley does not have the ability to make its loan payments now, it is unlikely it will have the ability to satisfy a money judgment later. Presumably, if Deer Valley

6

had the ability to pay, it would not be in default.

Numerous district courts in the Eighth Circuit, including this Court, have recognized it is appropriate to issue a temporary restraining order to maintain the *status quo* where there is a threat of asset dissipation.  See Meccatech, Inc. v. Kiser, 2008 WL 934366 (D. Neb. April 1, 2008); W. Onion Sales, Inc. v. KIDCO Farms Processing, Inc., 2006 WL 2604821 (D.N.D. Sept. 8, 2006); Barrett v. Reynolds, 2012 WL 5569755 (D. Neb. Nov. 15, 2012).  The affidavits and supporting documents filed by GE Capital support a reasonable inference of a threat of asset dissipation.  See Docket Nos. 3 and 7.

The Court finds the threat of Deer Valley implementing methods to conceal or dispose of the Remaining Collateral is real and poses a significant threat of irreparable harm to GE Capital. Further, the Eighth Circuit has explained that a district court can presume irreparable harm if the movant is likely to succeed on the merits.  Calvin Klein Cosmetics Corp., 815 F.2d at 505 (citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753  (8th Cir. 1980)).  As GE Capital has demonstrated the threat of irreparable harm and a likelihood of success on the merits, the Court finds this *Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

### C. BALANCE OF HARM

As outlined above, GE Capital has demonstrated the threat of irreparable harm.  The balance of harm factor requires consideration of the balance between the harm to the movant and the injury the injunction's issuance would inflict on other interested parties.  Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994).  While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harm factor analysis examines the harm to all

parties to the dispute and other interested parties, including the public. Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991).

At this early stage, GE Capital has clearly shown that if a temporary restraining order is not issued, the Defendants would be unable to mitigate their losses and the Remaining Collateral would continue to depreciate and deteriorate. If a temporary restraining order is not issued, GE Capital would suffer significant harm, as the Remaining Collateral may be its only means of recovery from Deer Valley.

The Court must also look to the likely harm to Deer Valley if a temporary restraining order is not issued. If temporary injunctive relief is granted, Deer Valley would be prohibited from using the tank trailers in its business. This may cause Deer Valley some degree of business interruption. However, this situation was bargained for in the Loan Documents and should come as no surprise to Deer Valley given its default. The issuance of a temporary restraining order would allow for a brief fourteen (14) day sequestration of the tank trailers to allow the parties to be heard on the issue of whether a preliminary injunction should be issued. Given the relatively short time period and the potential for GE Capital to lose what is likely its only source of compensation and thus suffer significant harm, the Court finds the "balance of harm" *Dataphase* factor weighs in favor of issuance of an *ex parte* temporary restraining order.

### D. **PUBLIC INTEREST**

The public has an interest in ensuring that defendants do not fraudulently or otherwise transfer assets during litigation to circumvent recovery by a wronged plaintiff. MeccaTech, Inc., 2008 WL 934366 at *4. In addition, the public has an interest in protecting the orderly enforcement of loan obligations and the right to contract. Therefore, at this preliminary stage, the Court finds this

*Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

After a careful review of the entire record and the *Dataphase* factors, the Court finds GE Capital has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order.

## IV. CONCLUSION

The Court has carefully reviewed the entire record and the *Dataphase* factors and finds GE Capital has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order. The Court **GRANTS** the motion for a temporary restraining order (Docket No. 5). As a result, the Defendant, Deer Valley Trucking, Inc., is **TEMPORARILY RESTRAINED AND ENJOINED** from moving, sequestering, or using of the following collateral:

|     | Description  | Year | Model | Serial Number/VIN  |
| --- | ------------ | ---- | ----- | ------------------ |
| 1)  | TANK TRAILER | 2012 | 130VR | 4C9AA42201A158236  |
| 2)  | TANK TRAILER | 2012 | 130VR | 4C9AA42272A158817  |
| 3)  | TANK TRAILER | 2012 | 130VR | 4C9AA42202A158819  |
| 4)  | TANK TRAILER | 2012 | 130VR | 4C9AA42262A158825  |
| 5)  | TANK TRAILER | 2012 | 130VR | 4C9AA42292A158818  |
| 6)  | TANK TRAILER | 2012 | 130VR | 4C9AA42262A158243  |
| 7)  | TANK TRAILER | 2012 | 130VR | 4C9AA42232A158815  |
| 8)  | TANK TRAILER | 2012 | lSOVR | 4C9AA42232A158247  |
| 9)  | TANK TRAILER | 2012 | 130VR | 4C9AA42252A158816  |
| 10) | TANK TRAILER | 2012 | 130VR | 4C9AA42232A158829  |
| 11) | TANK TRAILER | 2012 | VT165 | 4C9AA48302A158870  |
| 12) | TANK TRAILER | 2012 | VT165 | 4C9AA48312A158814  |
| 13) | TANK TRAILER | 2012 | VT165 | 4C9AA483X2A158813  |
| 14) | TANK TRAILER | 2012 | VT165 | 4C9AA48312A158876  |

| # | Type | Year | Model | VIN |
|---|---|---|---|---|
| 15) | TANK TRAILER | 2012 | VT165 | 4C9AA48382A158812 |
| 16) | TANK TRAILER | 2012 | VT165 | 4C9AA48382A158874 |
| 17) | TANK TRAILER | 2012 | VT165 | 4C9AA48322A158871 |
| 18) | TANK TRAILER | 2012 | VT165 | 4C9AA48342A158872 |
| 19) | TANK TRAILER | 2012 | VT165 | 4C9AA48362A158873 |
| 20) | TANK TRAILER | 2012 | VT165 | 4C9AA483X2A158875 |
| 21) | TANK TRAILER | 2012 | VT165 | 4C9AA48362A158842 |
| 22) | TANK TRAILER | 2012 | VT165 | 4C9AA48322A158451 |
| 23) | TANK TRAILER | 2012 | VT165 | 4C9AA48382A158454 |
| 24) | TANK TRAILER | 2012 | VT165 | 4C9AA48322A158840 |
| 25) | TANK TRAILER | 2012 | VT165 | 4C9AA48342A158452 |
| 26) | TANK TRAILER | 2012 | VT165 | 4C9AA48342A158841 |
| 27) | TANK TRAILER | 2012 | VT165 | 4C9AA48302A158450 |
| 28) | TANK TRAILER | 2012 | VT165 | 4C9AA48352A158878 |
| 29) | TANK TRAILER | 2012 | VT165 | 4C9AA48332A158877 |
| 30) | TANK TRAILER | 2012 | VT165 | 4C9AA48362A158453 |
| 31) | TANK TRAILER | 2012 | VT165 | 4C9AA48332A158846 |
| 32) | TANK TRAILER | 2012 | VT165 | 4C9AA48312A158845 |
| 33) | TANK TRAILER | 2012 | VT165 | 4C9AA483X2A158844 |
| 34) | TANK TRAILER | 2012 | VT165 | 4C9AA48382A158843 |
| 35) | TANK TRAILER | 2012 | VT165 | 4C9AA483X2A158455 |
| 36) | TANK TRAILER | 2012 | VT165 | 4C9AA48312A158456 |
| 37) | TANK TRAILER | 2012 | VT165 | 4C9AA48332A158457 |
| 38) | TANK TRAILER | 2012 | VT165 | 4C9AA48352A158458 |
| 39) | TANK TRAILER | 2012 | VT165 | 4C9AA48372A158459 |
| 40) | TANK TRAILER | 2012 | VT165 | 4C9AA48312A158473 |
| 41) | TANK TRAILER | 2012 | VT165 | 4C9AA483X2A158469 |
| 42) | TANK TRAILER | 2012 | VT165 | 4C9AA48382A158485 |
| 43) | TANK TRAILER | 2012 | VT165 | 4C9AA48382A158468 |
| 44) | TANK TRAILER | 2012 | VT165 | 4C9AA48302A158478 |

| 45) | TANK TRAILER | 2012 | VT165 | 4C9AA48322A158479 |
| 46) | TANK TRAILER | 2012 | VT165 | 4C9AA48302A158481 |
| 47) | TANK TRAILER | 2012 | VT165 | 4C9AA48362A158484 |
| 48) | TANK TRAILER | 2012 | VT165 | 4C9AA48342A158483 |
| 49) | TANK TRAILER | 2012 | lSOVR | 4C9AA42272A158249 |
| 50) | TANK TRAILER | 2012 | VT165 | 4C9AA48322A158482 |

In addition, the Court **ORDERS** the following:

1) A hearing will be held in Courtroom One of the U.S. District Court for the District of North Dakota, in Bismarck, North Dakota, on **Tuesday, December 9th, 2014, at 4:00 p.m.** to determine whether a preliminary injunction should be issued.

2) At the hearing, the Plaintiff shall be prepared to show cause why a preliminary injunction should be issued. If the Plaintiff fails to do so, "the court must dissolve the [restraining] order." Fed.R.Civ.P. 65(b)(3).

3) At the hearing, the Defendant shall be prepared to show cause why they should not be preliminarily enjoined during the pendency of this action.

4) At any time, the Defendant may file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure. The Defendant may also contact the U.S. District Court to modify the time or date of the scheduled hearing.

5) The temporary restraining order will not become effective until the Plaintiff serves the order on the Defendant. The Plaintiff shall arrange for the immediate service of this order together with the Plaintiff's motion for a temporary restraining order (Docket No. 4) and the supporting pleadings and affidavits (Docket Nos. 5, 6, and 7), and shall promptly file proof of service with the Court.

6) No bond shall be required to be posted by the Plaintiff before the temporary restraining order is effective.

7) In accordance with Rules 65(b)(2), this order expires in 14 days or on or before December 9th, 2014, at the same hour of this Order, unless the Court, for good cause, extends the order "for a like period or the adverse party consents to a longer extension."

**IT IS SO ORDERED**.

Dated at 11:10 a.m., this 26th day of November, 2014.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court